Alexander H. Winnick, State Bar # 239430
WINNICK LAW, PC
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
aw@winlawpc.com
p: (424) 317-7411
c: (310) 415-5594

Maurice R. Mitts, Esq. (*Pro Hac Vice Forthcoming*)
MITTS LAW, LLC
1822 Spruce Street
Philadelphia, PA 19103
mmitts@mittslaw.com
p: (215) 866-0112
f: (215) 866-0113

Evan Murphy, Esq. (*Pro Hac Vice Forthcoming*)
MURPHY ADVOCATES LLC
338 Selma Avenue
St. Louis, MO 63119
evan@murphyadvocates.com
p: (314) 753-5212

Attorneys for Plaintiffs.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Barbara Barber, Antonio Duenas, Alfred Holguin, and Andrew Epstein individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM,<br><br>Defendant(s). | Case No.: 2:25-cv-12361<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. UNFAIR COMPETITION**<br>**2. VIOLATION OF CONSUMER LEGAL REMEDIES ACT**<br>**3. BREACH OF CONTRACT**<br>**4. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**5. QUASI-CONTRACT**<br>**6. FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Barbara Barber, Antonio Duenas, Alfred Holguin, and Andrew Epstein (collectively "Plaintiffs"), and all others similarly situated, for their complaint against CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM ("Charter"), allege as follows:

## INTRODUCTION

1. Plaintiffs bring this consumer class action against Charter to challenge its unfair, deceptive, and unlawful business practice of advertising artificially low monthly prices for cable television services while concealing and misrepresenting the true cost of service through an undisclosed and ever-increasing charge known as the "Broadcast TV Surcharge" (the "BTS"). This hidden fee, imposed without adequate disclosure or contractual basis, functions as a deceptive price increase in violation of federal truth-in-billing requirements, state consumer protection statutes, and well-established principles of contract law.

2. Charter claims on its website that the BTS

> "is a pass-through fee reflecting charges from local broadcast or affiliate TV stations. While these stations distribute their signals over the air using free spectrum granted by the federal government, they charge us significant amounts to carry them. These signals were previously available to us at low or no cost, but rising prices have required us to pass costs on to our customers in the form of a monthly fee."

3. Charter's representations to consumers are materially false and misleading. Charter prominently advertises "fixed" monthly service rates that appear to be inclusive of all required charges. Yet, after inducing consumers to subscribe, Charter unilaterally imposes the BTS - currently as high as $28.00 per month - on top of the advertised rate. This surcharge is not disclosed in Charter's marketing materials, promotional offers, or standardized subscriber agreements. Consumers first learn of the BTS only after they have committed to service and receive their initial bills.

4. The BTS is neither a government-mandated fee nor a legitimate "pass-through" of broadcaster costs. Rather, it is a revenue-generating device devised by

Charter to mislead consumers and inflate its profits while maintaining the illusion of competitive pricing. Since its inception in 2010 at $1.00 per month, the BTS has ballooned by an astonishing 2,700%, far outpacing any change in underlying broadcaster costs. Indeed, local broadcast television programming remains freely accessible to the public over-the-air. Charter's surcharges thus bear no rational relationship to its actual expenses and instead operate as disguised rate increases.

5. By concealing and misrepresenting the BTS, Charter has duped millions of consumers nationwide into paying unlawful and inflated charges. This deceptive scheme enables Charter to market ostensibly low prices while quietly shifting the true cost of service onto unsuspecting subscribers. Charter's conduct not only causes substantial economic injury to consumers but also distorts competition in the marketplace by allowing Charter to advertise prices that appear lower than those of rival providers who accurately disclose their charges.

6. Plaintiffs seek redress on behalf of all affected consumers, including restitution of improperly collected surcharges, injunctive relief to prohibit Charter's misleading billing practices, and damages as permitted by law.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states. All named Plaintiffs are citizens of California and seek to represent a class of similarly situated California consumers. Charter is a corporation organized under the laws of Delaware with its principal place of business in Connecticut. Complete diversity therefore exists between Plaintiffs and Defendant.

8. In addition, jurisdiction is proper under 28 U.S.C. § 1332(d) (the Class Action Fairness Act) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed class contains more than 100 members, and at least one member of the class is a citizen of a state different from Defendant.

9. Venue is proper under 28 U.S.C. § 1391(b) because Defendant transacts substantial business in this District, maintains a large customer base in California, and a substantial part of the events or omissions giving rise to these claims occurred here.

## PARTIES

10. Plaintiffs are consumers and subscribers of Charter cable services who were charged the BTS.

11. Defendant Charter Communications, Inc., dba Spectrum is a Delaware corporation with its principal place of business in Stamford, Connecticut. Charter provides cable television, internet, and telecommunications services to millions of subscribers nationwide, including throughout California. At all times relevant, Defendant acted through its agents, employees, subsidiaries, and/or affiliates.

## GENERAL ALLEGATIONS

12. While Charter advertises certain prices for their monthly cable plans, Charter then adds unexpected hidden charges including the BTS.

13. On information and belief Charter launched the BTS in 2010 at $1.00 per month. Since then, Charter has systematically raised the fee without transparency or adequate disclosure. As of November 25, 2025 the BTS reached $28.00 per month, a staggering 2,700% increase in 15 years.

14. Charter markets its cable packages by advertising flat monthly prices, often in bold print on its website, television commercials, and promotional flyers. These marketing materials omit any mention of the BTS. A reasonable consumer reviewing such advertisements would conclude that the listed monthly price represents the actual monthly cost of service[1].

[1] Beginning January 1, 2025 Charter began advertising and billing the BTS under the FCC's All-In-Pricing Rule. See All-In Pricing for Cable & Satellite Television Serv., 89 Fed. Reg. 3150 (Jan. 17, 2024).

15. Only after signing up for service and receiving their first monthly bill do customers learn of the BTS. Even then, the fee is often buried under ambiguous line-items, with language suggesting it is a regulatory or government-mandated fee.

16. Charter attempts to justify the BTS through a series of statements on its website that misrepresent both the law and the nature of the charge.[2] Charter claims that "[f]ederal law allows local U.S. broadcast TV stations (network affiliates like CBS, NBC, ABC, Fox, etc.) to negotiate with cable and satellite providers for 'consent' to carry their broadcast signals," and asserts that "as a result, we're forced to pass those charges on as a 'Broadcast TV Surcharge.'" Charter further represents that "rising prices have required us to pass costs on to our customers in the form of a monthly fee," and that "the laws leave few options for companies like ours." These statements are materially false and misleading because no federal law requires Charter to impose a separate surcharge or to pass these costs directly to consumers. The Cable Television Consumer Protection and Competition Act of 1992 merely allows broadcasters to negotiate for retransmission consent; it does not compel cable operators to recover such costs through an additional, undisclosed line item. Charter's decision to create and inflate the BTS is entirely discretionary and was implemented to enhance revenue, not to comply with any legal mandate.

17. Charter also tells consumers that "[t]he Broadcast TV Surcharge is a pass-through fee reflecting charges from local broadcast or affiliate TV stations," and that these stations "distribute their signals over the air using free spectrum granted by the federal government" but "charge us significant amounts to carry them." These statements are deceptive because they falsely suggest that the surcharge is a neutral "pass-through" of unavoidable third-party costs. In truth, Charter has complete discretion over how to price, allocate, and disclose retransmission costs, and the BTS far exceeds any actual increase in such fees. Industry data show that retransmission fees have risen

[2] Spectrum explains the BTS on its website at *https://www.spectrum.net/support/account-and-billing/broadcast-tv-surcharge*

modestly compared to the more than 2,400% increase in Charter's BTS, demonstrating that the surcharge is not a direct cost recovery but a profitable markup disguised as a regulatory fee.

18. Charter further asserts that "[w]e're in favor of changes to this law, and if those changes are successful, we'll remove the additional charges." This statement falsely implies that the BTS is an unavoidable consequence of federal regulation that Charter would eliminate if legally permitted. That is untrue: nothing in federal law prevents Charter from incorporating retransmission costs into its advertised rates or eliminating the BTS altogether. By mischaracterizing a voluntary business practice as a government-imposed requirement, Charter deceives consumers about both the necessity and origin of the surcharge, thereby violating the Consumers Legal Remedies Act, the Unfair Competition Law, and the False Advertising Law.

19. On information and belief, Charter's stated justification for the Broadcast TV Surcharge is false. Charter claims that the surcharge merely reflects rising "retransmission consent" fees charged by local broadcasters and that it **must** "pass through" those costs to consumers. In reality, the surcharge substantially exceeds Charter's actual costs and has increased at a rate many times greater than industry-wide retransmission fees. On information and belief, Charter retains a significant portion of the surcharge as profit rather than using it to pay broadcaster fees. Accordingly, Charter's representation that the BTS is a "pass-through" cost imposed by others is knowingly false and designed to conceal a discretionary, revenue-generating charge as a purportedly mandatory fee.

20. Neither Charter's Subscriber Agreement nor its Terms of Service adequately disclose the BTS or provide meaningful detail as to the fee's calculation, timing, or unilateral adjustments. The BTS is not identified in Charter's Residential General Terms and Conditions of Service, which only says: "After Service has been established, the Subscriber will be responsible for the payment of all applicable charges, including taxes, fees and surcharges to avoid discontinuance of Service." Charter

reserves the right to change the fee at will, ensuring a continuous revenue stream not tied to actual costs.

21. Charter imposes the BTS on every customer who subscribes to its cable-television service, regardless of whether that customer actually watches, receives, or even has access to local broadcast television channels. On information and belief, the surcharge is not tied to the amount of broadcast content viewed or used and applies equally to subscribers who never tune to a broadcast network channel. Charter thus forces all subscribers to subsidize its purported "retransmission costs," even those who do not benefit from or desire the programming it claims to cover. This flat, mandatory surcharge is not a legitimate pass-through fee but a hidden rate increase designed to inflate Charter's revenue while concealing the true monthly cost of service. The disclosure further provides an unfair and deceptive explanation as to why the customer is being charged the BTS and expressly fails to tell the customers that, absent using a Charter account, the customer can access broadcast television free of charge.

22. In actuality, the BTS was concocted by Charter as an unlawful mechanism to increase their revenue. Charter's scheme has enabled it to reap hundreds of millions of dollars annually from unsuspecting consumers nationwide.

## CLASS ALLEGATIONS

23. Plaintiffs bring this action individually and on behalf of all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

24. **Class Definition:** All current or former Charter cable television subscribers in California who were charged a "Broadcast TV Surcharge" within the applicable statutes of limitation. Excluded from the Class are Defendant, its officers, directors, employees, counsel, the judges assigned to this case, and their immediate families. Further excluded from the Class are Charter cable television subscribers whose subscription began after January 1, 2025.

25. **Numerosity**: The proposed Class is so numerous that joinder of all members is impracticable. Charter services tens of millions of subscribers nationwide, and publicly available data shows that the overwhelming majority have been subjected to the Broadcast TV Surcharge ("BTS") since its inception. Rule 23 does not require an exact tally of Class Members, and courts have routinely found that classes far smaller than this easily satisfy the numerosity requirement. Here, the Class likely encompasses millions of consumers across multiple states, making individual joinder not only impracticable but functionally impossible.

26. **Commonality**: There are numerous questions of law and fact common to the Class that are central to the resolution of this dispute. These questions include, but are not limited to: (a) whether Charter's imposition of the BTS violates federal truth-in-billing requirements; (b) whether Charter's failure to disclose or adequately explain the surcharge violates state consumer-protection statutes; (c) whether Charter's imposition of the BTS constitutes a breach of its standardized contracts with subscribers; (d) whether Charter's uniform billing practices amount to unjust enrichment; and (e) the extent to which damages, restitution, or injunctive relief are owed to the Class. Because Charter engaged in uniform conduct across its subscriber base, the answers to these questions will be common to all Class Members and will drive the resolution of the litigation.

27. **Typicality**: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all Class Members, subscribed to Charter's services, was promised a fixed monthly price, and was then subjected to the undisclosed and ever-increasing BTS. Plaintiffs' injuries - payment of unlawful and deceptive charges - arise from the same course of conduct by Charter and are redressable under the same legal theories as those of the Class. The claims are thus aligned, ensuring that proof of Plaintiffs' case will simultaneously prove the claims of the Class.

28. **Adequacy**: Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs have no interests antagonistic to those of other Class Members and

seek the same relief on their behalf. Further, Plaintiffs have retained highly qualified counsel with substantial experience litigating complex consumer-protection and class action cases in federal courts nationwide. Proposed Class Counsel have the resources, skill, and commitment necessary to vigorously prosecute this matter and to protect the interests of absent Class Members.

29. **Superiority**: A class action is the superior and most efficient means of adjudicating this controversy. The damages suffered by individual Class Members, while significant in the aggregate, are relatively modest on a per-consumer basis, rendering individual litigation economically impractical and inefficient. Proceeding as a class action avoids the unnecessary duplication of judicial resources, promotes consistency of adjudication, and ensures that millions of consumers who were subject to the same unlawful practices will have an opportunity for redress. In contrast, without class treatment, Charter's misconduct would likely go unremedied, as few individuals could shoulder the cost of litigation relative to the size of their claims.

## CLAIMS FOR RELIEF

## COUNT I

## UNFAIR COMPETITION

## (California Business & Professions Code § 17200 et seq.)

30. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

31. Business and Professions Code section 17200 prohibits any unlawful, unfair, or fraudulent business act or practice and any false or misleading advertising. The statute is broad in scope and intended to protect both consumers and competitors from conduct that threatens honest competition and the public welfare.

32. Defendant has engaged in unlawful business acts and practices within the meaning of section 17200 by violating, inter alia:

a. **Public Utilities Code § 5900(a)** – which requires holders of state video-service franchises to comply with all federal and state customer-service and consumer-protection standards, including disclosure and billing standards;

b. **Cal. Govt. Code §§ 53055, 53055.1, and 53055.2** – which require cable television and video providers to establish and comply with customer-service standards governing billing, charges, refunds, and credits; to provide customers and local agencies with annual written notices clearly describing all services and rates; and to include annual reports demonstrating compliance with those standards.

c. **Cal. Govt. Code § 53088.2** – which requires that all video providers render bills that are accurate and understandable.

d. **47 C.F.R. § 76.1619** – which states that cable operators' customer's bills must be clear, concise, understandable, and fully itemized.

e. **47 C.F.R. § 76.1603(b)** – which requires cable operators to provide written notice to subscribers of any changes in rates or services at least 30 days in advance of the change, and that notice of rate changes shall include the precise amount of the rate change and explain the reason for the change in readily understandable terms.

f. **Cal. Bus. & Prof. Code § 17602(a)(2)** – which prohibits charging consumers for automatic renewal services "without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms." Affirmative consent requires disclosure of all material terms including pricing.

g. **Cal. Bus. & Prof. Code § 17500** – which prohibits making or disseminating any untrue or misleading statement to induce the public to enter into any obligation for services.

33. By advertising fixed monthly prices for cable-television services while concealing and later imposing an undisclosed and ever-increasing "Broadcast TV Surcharge," Charter has violated each of the foregoing provisions and thereby engaged in "unlawful" conduct under section 17200.

34. Charter's conduct is also "unfair" within the meaning of section 17200 because it offends established public policy and causes substantial injury to consumers that is not outweighed by any countervailing benefit. Charter's concealment of a discretionary surcharge misleads consumers, distorts market competition by creating the false appearance of lower advertised prices, and forces customers to pay more than they reasonably expected. The harm to consumers and the marketplace is significant and unjustified.

35. The Cable Communications Policy Act, 47 U.S.C. § 521 et seq., sets forth Congress's national policy that cable systems must be "responsive to the needs and interests of the local community" and should provide "the widest possible diversity of information sources and services to the public." 47 U.S.C. § 521(2),(4). This statutory framework reflects a core public policy of transparency, accountability, and consumer protection in the operation of cable systems. Charter's practice of advertising artificially low base rates while concealing a mandatory and ever-increasing "Broadcast TV Surcharge" frustrates these federal objectives by depriving consumers of accurate price information and undermining informed choice in the marketplace. By concealing the true cost of service, Charter acts contrary to the express policy Congress adopted to ensure that cable operators serve the public interest and maintain openness and fairness in their dealings with subscribers.

36. The FCC has found that "individuals, consumer protection organizations, state and local governments, and franchise authorities report that consumers experience 'considerable' confusion and surprise when unanticipated charges and fees for cable

and satellite video programming are not included in the advertised price in promotional materials and are separately listed on bills." [3]

37. "According to Consumer Reports, fees are 'often imposed or increased with little notice, and are often listed among a dizzying array of other charges, including government-imposed fees and taxes' while cable companies 'continue advertising relatively low base rates.' Further, a 2018 'Secret Shopper Investigation' conducted by Consumer Reports found that consumers were provided with inaccurate or confusing fee-related information by customer service representatives of cable and DBS providers on a number of occasions. This included customer service representatives portraying certain company-imposed fees as government-imposed taxes and fees; failing to mention fees; or offering incomplete fee information."[4]

38. Comments filed by individual consumers as well as state and local governments and franchise authorities likewise detail concerns about misleading promotional materials and bills for cable and DBS service and urge the Commission to adopt an 'all-in' rule to protect consumers. The record indicates that approximately 24 to 33 percent of a consumer's bill is attributable to company-imposed fees such as "Broadcast TV Fees…and others, and that the 'dollar amount of company-imposed fees has skyrocketed.' However, consumers too often lack transparent information about fees that significantly increase the cost of advertised and billed video services and how they will affect their total cost and bottom-line budget. Increases in fees relating to video programming during the term of the service agreement are sources of consumer surprise and confusion, and it is 'especially notable…that these fees are being raised by cable companies even while many consumers are locked into supposed "fixed-rate" contracts.' As the Local Government Commenters emphasize, these fees disproportionately impact lower-income households."[5]

---

[3] *https://www.federalregister.gov/documents/2024/04/19/2024-07404/all-in-pricing-for-cable-and-satellite-television-service?utm_source=chatgpt.com*

[4] Id.

[5] Id.

39. In April 2024, the Federal Communications Commission adopted the *All-In Pricing for Cable and Satellite Television Service* rule, FCC 24-29, 89 Fed. Reg. 28660 (Apr. 19, 2024)[6], codified at 47 C.F.R. § 76.310 (*Truth in Billing and Advertising*). The rule requires cable operators and direct broadcast satellite providers to disclose a single, "all-in" aggregate price for video programming that includes all company-imposed recurring fees—specifically identifying "Broadcast TV Fees" and "Regional Sports Surcharges"—both on subscribers' bills and in advertising. The FCC found that such company-imposed fees "have skyrocketed in recent years" and mislead consumers by concealing the true cost of service. (*All-In Pricing for Cable and Satellite Television Service*, 89 Fed. Reg. at 28661-62 (Apr. 19, 2024).)

40. Charter's acts and omissions are "fraudulent" within the meaning of section 17200 because they are likely to deceive members of the public. Charter represents that its cable-television services are available at fixed rates and that the Broadcast TV Surcharge reflects unavoidable or government-mandated costs. In truth, the surcharge is a self-imposed and discretionary fee used to inflate revenue, not a required pass-through charge. Reasonable consumers reviewing Charter's advertising and promotional materials would believe the listed monthly price to be the full price of service, when in fact it is not.

41. As a direct and proximate result of Charter's unlawful, unfair, and fraudulent acts and practices, Plaintiffs and members of the proposed class paid money they otherwise would not have paid, suffered monetary loss, and were deprived of the benefit of accurate price disclosure. Plaintiffs and the Class therefore lost money or property within the meaning of Business and Professions Code section 17204.

42. Pursuant to Business and Professions Code sections 17203 and 17204, Plaintiffs seek:

[6] Id.

a. Restitution and disgorgement of all monies wrongfully obtained from Plaintiffs and the Class through Charter's unlawful, unfair, and fraudulent conduct;
b. A permanent injunction prohibiting Charter from misrepresenting, concealing, or failing to disclose any surcharges or fees in connection with its video-service pricing and from continuing to collect or increase the Broadcast TV Surcharge absent clear, advance disclosure;
c. An award of reasonable attorney's fees and costs pursuant to Code of Civil Procedure § 1021.5 and the common-fund doctrine; and
d. Such other and further relief as the Court deems just and proper.

43. Plaintiffs further request public injunctive relief as follows;

a. **Provide Clear and Accurate Bills.** Render subscriber bills that are accurate, understandable, and identify a single aggregated line item showing the total cost of video service, consistent with federal and state truth-in-billing requirements.
b. **Give Advance Notice of Increases.** Provide at least 30 days' written notice to all subscribers before imposing or increasing any surcharge, fee, or rate.
c. **Stop Misleading Terminology.** Stop describing company-imposed charges as "pass-through," "government," or "required" fees unless such characterization is factually accurate.
d. **Correct the Record.** Issue a corrective disclosure to all current subscribers explaining that the BTS is a Charter-imposed fee, not a government-mandated or third-party charge.
e. **Implement Compliance Oversight.** Establish internal compliance and employee-training procedures to ensure truthful disclosure of prices and surcharges on an ongoing basis.

f. **Update Terms and Conditions.** Revise Charter's subscriber agreements, terms of service, and online terms and conditions to clearly identify the existence of the BTS, explain how it is imposed, and clarify that it is a discretionary company-imposed charge, not a government-mandated fee.

g. **Disclose Basis for BTS Calculation.** Publicly identify the general components used to calculate the BTS, including the categories of costs Charter attributes to broadcaster retransmission for each locality, and periodically disclose any changes to that methodology.

h. Any other public injunctive relief the court deems appropriate.

## COUNT II

## VIOLATION OF CONSUMER LEGAL REMEDIES ACT

## (California Civil Code § 1750 et seq.)

44. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

45. Plaintiffs bring this claim pursuant to the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750 et seq., which prohibits unfair methods of competition and unfair or deceptive acts or practices undertaken in transactions intended to result, or which result, in the sale or lease of goods or services to any consumer. Cable-television and video-service subscriptions constitute "services" within the meaning of Civil Code § 1761(b).

46. Charter has engaged in one or more of the following deceptive and unlawful practices declared unlawful by Civil Code § 1770(a), including but not limited to:

a. **§ 1770(a)(5)** – representing that services have characteristics, benefits, or quantities that they do not have or that a person has a sponsorship,

approval, status, affiliation, or connection that the person does not have.

b. **§ 1770(a)(9)** – Advertising goods or services with intent not to sell them as advertised.

c. **§ 1770(a)(13)** – Making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions.

d. **§ 1770(a)(14)** – Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

e. **§ 1770(a)(19)** – Inserting an unconscionable provision in the contract.

47. Charter prominently advertises cable and video packages at a flat monthly rate that appears to be all-inclusive. After inducing consumers to subscribe, Charter imposes the undisclosed Broadcast TV Surcharge—currently as high as $28.00 per month—and unilaterally increases that charge over time. Charter falsely attributes the surcharge to government-mandated retransmission costs, even though no law requires Charter to impose such a fee or to pass broadcaster costs directly to consumers. These misrepresentations and omissions were material to consumers' purchasing decisions.

48. Charter's misrepresentations and omissions regarding the imposition, implementation, and true nature of the BTS were material because a reasonable consumer would attach importance to its existence in determining their choice of action in the transaction in question. The BTS fee signified a significant addition to the advertised and expected cost of Charter's services.

49. Plaintiffs and the Class reasonably relied on Charter's representations and omissions regarding the price and nature of its services. Had they known the true cost of service—including the concealed surcharge and Charter's discretion to raise it—they would not have subscribed or would have paid less.

50. As a direct and proximate result of Charter's violations of the CLRA, Plaintiffs and the Class members suffered economic injury in the form of overcharges and payments for services they would not have purchased on the same terms.

51. Pursuant to Civil Code § 1782(a), Plaintiffs have served written notice on Charter of the particular violations alleged herein and have demanded that Charter correct, repair, replace, or otherwise rectify its deceptive practices.

52. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request judgment against Defendant as follows:

a. Injunctive relief pursuant to § 1780(a)(2) enjoining Charter from continuing the deceptive conduct described above and requiring full and clear disclosure of all surcharges and fees;
b. Restitution and disgorgement of all amounts wrongfully obtained from Plaintiffs and the Class;
c. Actual and punitive damages as permitted by Civil Code § 1780(1),(5);
d. Attorney's fees and costs pursuant to Civil Code § 1780(e); and
e. Such other and further relief as the Court deems just and proper.

**<u>COUNT III</u>**

**BREACH OF CONTRACT**

53. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

54. Plaintiffs and the members of the proposed Class entered into binding written contracts with Charter, for the purchase of cable-television and related video services. Each subscriber agreement and the accompanying service order or promotional offer set forth the price, terms, and conditions for the provision of those services. Charter drafted and unilaterally imposed the standard-form contracts and controlled all relevant terms.

55. Charter's subscriber agreements and promotional materials expressly or impliedly promised to provide cable-television services at a fixed monthly rate, subject only to clearly disclosed taxes or government-imposed fees. Charter's agreements or promotional offers did not adequately disclose, identify, or reserve the right to impose a separate, discretionary charge labeled the "Broadcast TV Surcharge," nor did it disclose that the amount of this surcharge could be increased at Charter's sole discretion.

56. After inducing Plaintiffs and the Class to subscribe based on advertised and/or stated rates, Charter unilaterally imposed the Broadcast TV Surcharge—currently as high as $28.00 per month—on top of the agreed-upon price. Charter further increased that surcharge over time without proper notice, disclosure, or contractual authority. By adding this undisclosed charge and by inflating the monthly rate beyond what was promised, Charter materially breached its contracts with Plaintiffs and the Class.

57. As a direct and proximate result of Charter's breaches, Plaintiffs and the Class suffered monetary loss in the form of unlawful and excessive charges collected through the Broadcast TV Surcharge and other undisclosed billing practices. Plaintiffs and the Class have paid Charter sums in excess of the amounts contractually owed and are entitled to restitution and compensatory damages in an amount to be proven at trial.

58. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request judgment against Charter as follows:

a. For compensatory damages in an amount equal to the unlawful surcharges and overcharges collected by Charter;
b. For restitution and disgorgement of all amounts wrongfully obtained;
c. For declaratory relief that Charter's imposition of the Broadcast TV Surcharge violated its contractual obligations;
d. For attorney's fees and costs as allowed by law; and
e. For such other and further relief as the Court deems just and proper.

**COUNT IV**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

59. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

60. Every contract in California includes an implied covenant of good faith and fair dealing. This covenant requires each party to a contract to refrain from doing anything that would unfairly interfere with the right of the other to receive the benefits of the agreement. The covenant prevents a contracting party from exercising contractual discretion in a manner that is dishonest, arbitrary, or intended to deprive the other party of the benefits of the contract.

61. The express purpose of the parties' agreement was for Plaintiffs and the Class to receive cable-television and video services at the advertised monthly rate, subject only to clearly disclosed and lawful charges. The reasonable expectations underlying the contract were that Charter would deal honestly and fairly with its subscribers, charge the prices it represented, and not impose undisclosed or arbitrary surcharges designed to inflate revenues beyond the agreed price.

62. In the alternative, to the extent Charter contends that its subscriber agreements or terms of service authorized it to impose "additional fees or surcharges," Charter breached the implied covenant of good faith and fair dealing by exercising that discretion in bad faith and for an improper purpose. Charter used its billing discretion not to recover legitimate costs but to mislead consumers and disguise price increases through the so-called "Broadcast TV Surcharge." This conduct unfairly frustrated the central purpose of the contracts — transparent, stable pricing — and deprived Plaintiffs and the Class of the benefits of their bargains.

63. As a direct and proximate result of Charter's breach of the implied covenant, Plaintiffs and the Class have suffered economic injury in the form of undisclosed and excessive charges, including the BTS. They have paid more for Charter's services than they agreed or reasonably expected to pay.

64. Plaintiffs, on behalf of themselves and all others similarly situated, request judgment against Charter as follows:

a. For compensatory damages in an amount to be proven at trial;
b. For restitution and disgorgement of all monies wrongfully obtained;
c. For declaratory and injunctive relief prohibiting Charter from further violating the covenant of good faith and fair dealing;
d. For attorneys' fees and costs as allowed by law; and
e. For such other and further relief as the Court deems just and proper.

## COUNT V

## QUASI-CONTRACT

65. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

66. Plaintiffs and members of the proposed class conferred a substantial benefit upon Charter, by paying money for cable-television and video services. Charter knowingly accepted and retained these payments under circumstances that make it inequitable and unjust for Charter to retain the benefits without restitution.

67. Charter's wrongful conduct includes, but is not limited to:

a. Advertising fixed monthly rates for cable-television service while concealing a material portion of the true price through an undisclosed "Broadcast TV Surcharge;"
b. Misrepresenting the nature and origin of the surcharge as a government-mandated or pass-through fee when it was, in truth, a discretionary revenue device; and
c. Collecting and retaining millions of dollars in surcharges not authorized by contract, not agreed to by consumers, and not justified by actual costs.

68. This cause of action is pled in the alternative to Plaintiff's contract-based claims. To the extent the Court determines that no valid or enforceable contract governs the particular charges at issue, equity imposes a quasi-contractual obligation on Charter to refund the money obtained through deception and bad faith. Even if a contract exists, Charter's retention of these overcharges is inequitable and unjust under the circumstances.

69. As a result of Charter's conduct, Plaintiffs and the Class conferred monetary benefits upon Charter to which it is not entitled. Charter has been unjustly enriched at the expense of Plaintiffs and the Class. Equity and good conscience require that Charter make restitution by returning all monies wrongfully collected, including the Broadcast TV Surcharge and related overcharges.

70. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request judgment against Charter as follows:

a. For restitution and disgorgement of all monies Charter unjustly obtained;
b. For constructive trust or equitable lien over such funds;
c. For attorney's fees and costs as permitted by law or equity; and
d. For such other and further relief as the Court deems just and proper.

**<u>COUNT VI</u>**

**FRAUD**

**(California Civil Code §§ 1709, 1710, 3294)**

71. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72. Under Civil Code sections 1709 and 1710, every person is liable for the damages caused by willfully deceiving another with intent to induce that person to alter their position to their injury or risk. Fraud and deceit include both (1) the affirmative

misrepresentation of material facts and (2) the concealment or suppression of material facts by one who has a duty to disclose them.

73. Beginning at least as early as 2010 and continuing to the present, Charter engaged in a deliberate scheme to mislead consumers regarding the true cost of its cable-television and video services.

a. Charter affirmatively represented—in national advertising, website promotions, and sales communications—that consumers would receive cable-television service for a stated, fixed monthly price;

b. Charter omitted and concealed the existence and nature of the BTS. Charter did not disclose this surcharge in its advertisements, promotional materials, or subscriber agreements before customers committed to service;

c. After enrolling customers, Charter began imposing the surcharge—currently as high as $28.00 per month—on top of the advertised rate and represented that the charge was required by federal law or "pass-through" costs from local broadcasters;

d. In actuality, Charter knew the surcharge was entirely discretionary, not government-mandated, and was implemented to inflate revenue while preserving the false impression of competitive pricing.

74. Each of these misrepresentations and omissions was material because a reasonable consumer would consider the true total price of service important in deciding whether to subscribe.

75. At the time it made these representations and omissions, Charter knew they were false and misleading, or acted with reckless disregard for their truth. Charter's executives, marketing personnel, and billing departments were fully aware that:

a. The surcharge was self-imposed and profit-generating;

b. Federal law did not require it; and

c. The company's advertising omitted material pricing information.

76. Charter made and concealed these statements intentionally, with the purpose of deceiving consumers, inducing them to subscribe, and securing revenue it could not have lawfully obtained through transparent pricing.

77. Plaintiffs and members of the proposed class reasonably relied on Charter's representations that its service was available at a fixed monthly price and that all mandatory fees were included or government-imposed. Had they known the true facts—that Charter would impose and increase a discretionary "Broadcast TV Surcharge" for its own profit—they would not have subscribed or would have paid less.

78. As a direct and proximate result of Charter's fraud and deceit, Plaintiffs and the Class have suffered economic harm, including payment of unauthorized and excessive charges, loss of money, and deprivation of the benefit of truthful information in the marketplace.

79. Charter's conduct was carried out intentionally, willfully, and with conscious disregard of the rights and interests of consumers, constituting malice, oppression, and fraud within the meaning of Civil Code § 3294. Charter's corporate officers, managing agents, and executives authorized, ratified, or consciously disregarded this scheme to mislead the public about the true cost of service. Accordingly, Plaintiffs and the Class are entitled to an award of punitive and exemplary damages sufficient to punish and deter such conduct.

80. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests judgment against Charter as follows:

a. For compensatory damages according to proof;
b. For punitive and exemplary damages under Civil Code § 3294;
c. For restitution and disgorgement of ill-gotten gains;
d. For injunctive and declaratory relief prohibiting Charter from continuing the deceptive practices described herein;
e. For attorney's fees and costs as permitted by law; and
f. For such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23; appoint Plaintiffs as Class Representatives; and appoint undersigned counsel as Class Counsel;

B. Actual and compensatory damages;

C. Statutory damages;

D. Punitive damages as permitted by law;

E. Restitution, disgorgement, and all other equitable relief necessary to restore money wrongfully obtained by Defendant.

F. Pre- and post-judgment interest;

G. Attorney's fees and costs;

H. Declaratory and injunctive relief;

I. Public injunctive relief;

J. Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs and the Class demand a trial by jury in this action of all issues so triable.

Respectfully Submitted,

/s/ Alex Winnick
Winnick Law, PC
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
(424) 317-7411
aw@winlawpc.com

/s/ Evan Murphy (pro hac vice forthcoming)
Murphy Advocates LLC
338 Selma Avenue
St. Louis, MO 63119
(314) 753-5212
evan@murphyadvocates.com

/s/ Maurice Mitts (pro hac vice forthcoming)
Mitts Law LLC
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0110
mmitts@mittslaw.com

Attorneys for Plaintiffs and the Proposed Class