Alexander H. Winnick, State Bar # 239430
WINNICK LAW, PC
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
aw@winlawpc.com
p: (424) 317-7411
c: (310) 415-5594

Maurice R. Mitts, Esq. (*Pro Hac Vice Forthcoming*)
MITTS LAW, LLC
1822 Spruce Street
Philadelphia, PA 19103
mmitts@mittslaw.com
p: (215) 866-0112
f: (215) 866-0113

Evan Murphy, Esq.
MURPHY ADVOCATES LLC
338 Selma Avenue
St. Louis, MO 63119
evan@murphyadvocates.com
p: (314) 753-5212

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BARBARA BARBER, ANTONIO DUENAS, ALFRED HOLGUIN, and ANDREW EPSTEIN individually and on behalf of all other similarly situated,

Plaintiffs,

vs.

CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM,

Defendant(s).

Case No.: 2:25-cv-12361

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND TO STAY, OR IN THE ALTERNATIVE, DISMISS PLAINTIFFS' CLAIMS**

Date: March 23, 2026
Time: 9:00 a.m.
Dept. Courtroom 7C
Judge: Hon. Mark C. Scarsi

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. PROCEDURAL BACKGROUND ..... 3

IV. THE ISSUE OF ARBITRABILITY WAS DELEGATED TO AN ARBITRATOR AND THE ARBITRATOR HAS ALREADY DECIDED THAT THE CLAIMS ARE NOT ARBITRABLE ..... 6

V. CLASS ACTION WAIVERS OUTSIDE OF THE CONTEXT OF ARBITRATION ARE UNCONSCIONABLE, UNENFORCEABLE AND VOID ..... 11

A. The Small-Claims Carve-Out Places This Dispute Outside Arbitration and into the Judicial System ..... 12

B. The FAA Applies Only to Arbitration Agreements - Not to Standalone Class Action Waivers ..... 14

C. Outside Arbitration, Class Action Waivers Are Subject to Ordinary California Unconscionability Principles ..... 16

D. The CLRA Expressly Renders Class Action Waivers Void ..... 19

E. Plaintiffs Cannot Litigate a Class Action in Small-Claims Court ..... 20

F. Charter Fails to Provide Authority Supporting Striking the Class Allegations ..... 21

VI. PUBLIC INJUNCTIVE RELIEF IS NOT ARBITRABLE ..... 23

VII. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

## Cases

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013)..............14
*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)................................passim
*Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066 (1999).................23
*Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal.4th 303 (2003).............................23
*Dameron Hospital Assn. v. Progressive Casualty Ins. Co.*, 111 Cal.App.5th 530 (2025).........................................................................................................18
*Davis v. Taliaferro*, 206 Cal.App.2d 764 (1962)....................................................13
*Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005)............................16, 18, 21
*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025).................................15
*General Electric Capital Auto Financial Services, Inc. v. Appellate Division*, 88 Cal.App.4th 136 (2001).........................................................................................13
*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014)....................13
*Hansen v. Musk*, 122 F.4th 1162 (2024)....................................................................9
*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), cert. denied 146 S. Ct. 96 (2025)...............................................................................17, 18
*Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017)...........................9
*Hughes v. Municipal Court of City of Los Angeles*, 200 Cal. 215 (1926)................12
*Jackson v. Cnty. of Los Angeles*, 60 Cal.App.4th 171 (1997).................................10
*Janjua v. Neufield*, 933 F.3d 1061 (9th Cir. 2019)....................................................8
*Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459 (1994)..........................................................................................................13
*Laver v. Credit Suisse Securities* (USA), LLC, 976 F.3d 841 (9th Cir. 2020).........15
*Levin v. Ligon*, 140 Cal.App.4th 1456 (2006).........................................................11
*McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017).......................................................24

*Melili v. Charter Commc'ns Operating, LLC*, 2023 WL 12173445 (C.D. Cal. May 30, 2023) (No. 2:23-cv-00282-SPG-JPR)......22

*Meyer v. Kalanick*, 185 F.Supp.3d 448 (S.D.N.Y. 2016)......14, 15, 17, 21

*Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305 (2005)......18

*Nationwide Biweekly Administration, Inc. v. Superior Court*, 9 Cal.5th 279 (2020) ......24

*New Hampshire v. Maine*, 532 U.S. 742 (2001)......10

*Oyeniran v. Holder*, 672 F.3d 800 (9th Cir. 2012)......9

*Pacific Dry Goods Co. v. Superior Court*, 9 Cal.App.2d 707 (1935)......12, 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)......14

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)......6

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020)......14

*Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996)......10

*Rios v. HRB Digital LLC*, 807 F. Supp.3d 975 (N. D. Cal. 2025), appeal filed, No. 25-7199 (9th Cir. Nov. 14, 2025)......20

*Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015)......15

*Sonic–Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109 (2013)......15

*Textron Inc. v. Travelers Casualty & Surety Co.*, 45 Cal.App.5th 733 (2020)......10

*The Swahn Group, Inc. v. Segal*, 183 Cal.App.4th 831 (2010)......10

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167 (9th Cir. 2010)......8

*Vaughn v. Tesla Inc.*, 87 Cal.App.5th 208 (2023)......24

*Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal.App.4th 634 (2010)......17

///

///

//

**Statutes**

9 U.S.C. § 2 .......... 14
9 U.S.C. § 10 .......... 7, 8
9 U.S.C. § 11 .......... 7, 8
9 U.S.C. § 12 .......... 7
Cal. Civ. § 1668 .......... 16
Cal. Civ. § 1751 .......... 19
Cal. Civ. § 1781 .......... 19
Cal. Civ. § 3513 .......... 24
Cal. Civ. Pro. § 22 .......... 12
Cal. Civ. Pro. § 116.220 .......... 20
Cal. Civ. Pro. § 116.221 .......... 20
Cal. Civ. Pro. § 116.420 .......... 20

## I. INTRODUCTION

Charter's motion is not about whether Plaintiffs agreed to arbitrate – they already submitted this case for arbitration and it was ruled by the Arbitrator to not be arbitrable. In fact, that was Defendant's position before the Arbitrator – and its position was adopted by the Arbitrator. Charter now wants to reverse its own position after prevailing before an arbitrator. It cannot.

Plaintiffs filed individual arbitration demands pursuant to Charter's Residential Terms. Charter did not embrace arbitration. Instead, it invoked the delegation clause in its own agreement, requested appointment of a Process Arbitrator, and argued that Plaintiffs' claims were not arbitrable because they fell within the small-claims exclusion. The Process Arbitrator agreed and ordered the cases closed. Having secured that ruling, Charter now asks this Court to compel arbitration of the very claims it successfully argued were non-arbitrable.

The Federal Arbitration Act does not permit such relitigation. Charter delegated arbitrability to the arbitrator. The arbitrator decided the issue. The FAA provides limited avenues for vacatur within a strict three-month window. Charter did not pursue them. It cannot instead seek an untimely de facto appeal to the arbitrator's ruling by filing a motion to compel in federal court.

Moreover, even if the Court were to reach the merits, Charter's position collapses under its own logic. If arbitration is unavailable by virtue of the small-claims carve-out Charter invoked and won, then the FAA's arbitration-specific preemption does not apply. The class action waiver must be evaluated under ordinary California contract principles, including unconscionability and the CLRA's express anti-waiver provision. Charter identifies no authority requiring that the class allegations be struck once arbitration has been declared unavailable. Charter cannot both defeat arbitration and demand it. The Motion should be denied.

## II. FACTUAL BACKGROUND

This Action challenges Charter's practice of advertising a fixed monthly cable television price while separately charging a mandatory "Broadcast TV Surcharge" ("BTS") that increases the true cost of service. (Dkt. 1, ¶ 1).

Plaintiffs allege that Charter markets cable packages using "fixed" monthly rates that purport to be the total cost of service. (Dkt. 1, ¶¶ 3, 14). The BTS is not included in the advertised price. (Dkt. 1, ¶ 14). Customers only discover the surcharge after subscribing and receiving their first bill. (Dkt. 1, ¶ 15).

The BTS allegedly began at $1.00 per month in 2010 and has increased to as high as $28.00 per month. (Dkt. 1, ¶¶ 4, 13). Plaintiffs allege this increase bears no rational relationship to broadcaster costs and instead functions as a disguised rate increase. (Dkt. 1, ¶ 4).

Charter describes the BTS as a "pass-through" fee driven by retransmission consent costs and suggests it is compelled by federal law. (Dkt. 1, ¶¶ 2, 16). Plaintiffs allege that no federal law requires Charter to impose a separate surcharge or to pass those costs through in this manner. (Dkt. 1, ¶¶ 16, 18). Instead, Plaintiffs allege the BTS is a discretionary charge that substantially exceeds underlying costs and operates as a revenue-generating markup. (Dkt. 1, ¶¶ 19, 22).

The Complaint further alleges that neither Charter's standardized subscriber agreement nor its Terms of Service meaningfully disclose the existence or mechanics of the BTS, referencing only generic "taxes, fees and surcharges." (Dkt. 1, ¶ 20). The surcharge is imposed uniformly on all cable subscribers, regardless of whether the subscriber watches or accesses broadcast programming. (Dkt. 1, ¶ 21).

The practice challenged here- advertising a base price while separately imposing company-created "broadcast TV fees"- has received significant public and regulatory scrutiny. The Federal Communications Commission ("FCC") has

acknowledged that such company-imposed fees have "skyrocketed" and cause consumer confusion when excluded from advertised prices, where they are "often listed among a dizzying array of other charges." (Dkt. 1, ¶¶ 36–39). Local government commenters have emphasized that these fees disproportionately impact lower-income households. (Dkt. 1, ¶ 38). That scrutiny culminated in the FCC's 2024 "All-In Pricing" rule requiring cable providers to disclose an aggregate price in advertising. (Dkt. 1, ¶ 39).

Plaintiffs bring this case as a putative class action under Federal Rule of Civil Procedure 23 on behalf of California cable subscribers who were charged the BTS within the applicable statute of limitations, excluding subscribers whose service began after January 1, 2025. (Dkt. 1, ¶ 24). Plaintiffs allege that Charter's advertising, billing, and surcharge practices were standardized and applied uniformly to all class members. (Dkt. 1, ¶¶ 25–26).

Based on this uniform conduct, Plaintiffs assert claims under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"), as well as claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quasi-contract, and fraud. (Dkt. 1, ¶¶ 30–80). Plaintiffs seek restitution, damages, punitive damages, and public injunctive relief prohibiting Charter from continuing the challenged pricing practice and requiring clear and accurate billing consistent with federal and state truth-in-billing requirements. (Dkt. 1, ¶¶ 42–43, 52, 58, 64, 70, 80).

## III. PROCEDURAL BACKGROUND

In January 2025, Plaintiffs and thousands of other Charter subscribers filed individual consumer arbitration demands before the American Arbitration Association ("AAA") challenging Charter's imposition of the Broadcast TV

Surcharge ("BTS"). (Murphy Decl., ¶ 3, Exs. 1, 2, 3, 4). Each demand sought damages "up to $10,000.00" and injunctive relief. Plaintiffs' arbitration demands mirror those claims in the Complaint, alleging that Charter deceptively imposed and increased the "Broadcast TV Surcharge" ("BTS"), failed to disclose the true monthly price of its cable plans in advertising, and mischaracterized the surcharge as a pass-through fee, violating the CLRA.

Charter did not respond by embracing arbitration. Instead, Charter requested appointment of a Process Arbitrator under the AAA Mass Arbitration Supplementary Rules and asserted that the claims cannot proceed in arbitration at all. In fact, Charter's Opening Brief asserted that "the AAA lacks jurisdiction over such claims," that the Demands fell within the small-claims exclusion of its Residential Terms and the arbitration must be closed:

> "All of the Demands, therefore, are non-arbitrable under the Arbitration Agreement, and the AAA should close these cases."

(Murphy Decl., ¶ 4, Ex. 5 [pgs. 2, 34]).

In its response brief, Charter went further and argued that the claims were "not subject to arbitration" because they were within the jurisdiction of small-claims courts. (Murphy Decl., ¶ 6, Ex. 6 [pg. 4]).

After briefing and argument, the Process Arbitrator, Judge Dennis Cavanaugh (Ret.), issued a written Order & Opinion dated July 23, 2025, where he agreed with Charter that Plaintiffs' claims are not arbitrable. (Murphy Decl., ¶ 6, Ex. 7). The Arbitrator identified the central issue as the applicability of the small-claims exclusion in Charter's arbitration clause. (Murphy Decl., ¶ 6, Ex. 7 [pg. 2]). In addressing Charter's position, the Arbitrator wrote:

> "Virtually all of the claims submitted by the Individual Claimants are routine, jurisdictionally-sound small-claims

> court actions. The undersigned finds that this is a compelling argument and indeed those individual claims should be resolved by way of small-claims court actions, not by arbitration."

(Murphy Decl., ¶ 6, Ex. 7 [pg. 16]).

Arbitrator Cavanaugh's Order formally concluded:

> "For the reasons previously set forth, it is the finding of this Process Arbitrator that the Individual Claimants' cases should be closed and that the parties proceed in small-claims court."

(Murphy Decl., ¶ 6, Ex. 7 [pg. 24]).

Following that ruling, the AAA administratively closed each of the arbitration proceedings, including Plaintiffs' individual arbitrations. (Murphy Decl., ¶ 7, Ex. 8).

Having successfully argued before the AAA that these claims are "non-arbitrable," "not subject to arbitration," and contractually obligated to proceed in court, Charter now asks this Court to compel arbitration of the same claims.

In the present Motion to Compel Arbitration, Charter argues that Plaintiffs are bound by a "binding arbitration provision" contained in the Spectrum Residential General Terms and Conditions of Service and that this Court must compel arbitration pursuant to the Federal Arbitration Act. (Dkt. 18 at 1–2). Charter contends that Plaintiffs previously invoked that same arbitration agreement when filing their AAA demands and therefore "conceded that they are bound" by it. (Dkt. 18 at 1, 9). Charter further admits that the arbitration agreement contains a delegation clause requiring the arbitrator, and not this Court, to decide gateway issues of arbitrability. (Dkt. 18 at 10–11, 12-13).

///

///

///

//

## IV. THE ISSUE OF ARBITRABILITY WAS DELEGATED TO AN ARBITRATOR AND THE ARBITRATOR HAS ALREADY DECIDED THAT THE CLAIMS ARE NOT ARBITRABLE

### A. The Delegation Provision Delegated the Issue of Arbitrability to an Arbitrator

Charter's Motion asks this Court to decide a question that Charter itself says courts may not decide. Charter's arbitration agreement delegates threshold questions of arbitrability to the arbitrator, and when such delegation exists, courts must defer threshold arbitrability to an arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) [holding provision delegating the threshold issue of arbitrability is valid under the FAA and vests authority in the arbitrator to determine the issue of arbitrability].

Charter already invoked that very position and asked a designated AAA Process Arbitrator to resolve the threshold arbitrability question. Charter argued that the claims are non-arbitrable, that the AAA therefore lacked jurisdiction, and that the cases must be closed. The Process Arbitrator agreed and entered an order directing exactly that relief.

Having obtained a ruling that the claims are not arbitrable, Charter now seeks to relitigate the same gateway issue before this court. Indeed, Charter itself cites authority that squarely bars this very conduct. Directly from Charter's Motion to Compel:

> "The Ninth Circuit has 'long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result.' *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983). Put simply, '[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators

> to act.' *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964). California courts have also rejected this 'heads I win, tails you lose' approach to arbitration awards. *Caro v. Smith*, 69 Cal. Rptr. 2d 306, 310 (Cal. Ct. App. 1997) (quotation marks omitted); *Univ. of San Francisco Faculty Ass'n v. Univ. of San Francisco*, 191 Cal. Rptr. 346, 353–54 (Cal. Ct. App. 1983). A party 'may not agree to arbitrate a question and then, if the decision goes against [it], litigate the question in another proceeding.' *In re O'Malley*, 308 P.2d 9, 11 (Cal. 1957)."

(Dkt. 18 at 9:11-23).

Charter voluntarily submitted the threshold arbitrability question to the Arbitrator Cavanaugh under the delegation provision it champions; the issue was fully arbitrated; and Charter prevailed. (Murphy Decl., ¶¶ 4, 5, 6, Exs. 5, 6, 7). Charter cannot now challenge or disregard the Arbitrator's determination by seeking to compel arbitration simply because the ruling's practical effect is no longer to its advantage. Charter's own delegation clause governs the outcome. Charter argues that an agreement granting the arbitrator exclusive authority to decide issues of interpretation, applicability, scope, or enforceability requires courts to defer to the arbitrator's decision once the issue is submitted to arbitration and resolved. (Dkt. 18 at 1, 7, 12). Plaintiffs agree and reaffirm that once the determination of arbitrability is made, the inquiry ends.

**B. <u>The Federal Arbitration Act Bars Relitigating</u>**

The FAA only permits extremely limited judicial review of arbitration decisions and any challenge to an Arbitrator's award must be done within three (3) months of the arbitrator's decision. 9 U.S.C. §§ 10, 11, 12. That never happened. Arbitrator Cavanaugh's decision was rendered on July 23, 2025 and Charter's Motion to Compel Arbitration (its apparent challenge to the arbitrator's decision) was not filed until February 16, 2026, well-past the October 23, 2025 three-month deadline prescribed by the FAA. 9 U.S.C. § 12. (Murphy Decl., ¶ 6, Ex. 7).

Further, once parties submit an issue to an arbitrator acting within delegated authority, a district court will not revisit the merits of that determination. The narrow exceptions (not at issue here) are found under sections 10 and 11 of the FAA, which allow relief only in extraordinary circumstances such as corruption, evident partiality, misconduct, or an arbitrator exceeding his powers. 9 U.S.C. §§ 10, 11. Outside of those limited grounds, arbitral decisions are final and binding and must be afforded substantial deference.

Charter does not raise a Section 10 or 11 challenge. Charter fully litigated the threshold issue of arbitrability before a duly appointed AAA Process Arbitrator, argued that the claims were non-arbitrable and that the AAA lacked jurisdiction, and urged the arbitrator to close the cases. (Murphy Decl., ¶¶ 4, 5, Exs. 5, 6). The Process Arbitrator agreed and granted exactly the relief Charter requested. (Murphy Decl., ¶ 6, Ex. 7). An arbitrator does not abuse discretion by adopting a party's own interpretation of the agreement, applying the governing arbitration rules, and ruling in that party's favor. Sections 10 and 11 do not authorize a court to vacate or modify an arbitral ruling simply because the prevailing party later regrets the practical consequences of the position it advanced. *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167 (9th Cir. 2010) (the Court outlined the requirements for vacatur or modification under the FAA and refused to do either under its deferential standard).

**C. <u>Collateral Estoppel Bars Charter From Seeking a Motion to Compel</u>**

Considered plainly, Charter's Motion is a back-door appeal from an arbitral ruling it now dislikes (even though it asked for it). Charter now asks this Court to decide the same gateway issue of arbitrability that was already presented to and resolved by Arbitrator Cavanaugh. That effort is barred by collateral estoppel.

Collateral estoppel precludes relitigation of issues argued and decided in a prior proceeding and has been applied uniformly by the Ninth Circuit. *Janjua v.*

*Neufield*, 933 F.3d 1061 (9th Cir. 2019). The four factors to consider are: (1) whether the issue(s) at stake are identical in both proceedings; (2) whether the issue(s) was actually litigated and decided in the prior proceeding; (3) whether there was a full and fair opportunity to litigate the issue(s); (4) whether the issue previously decided was necessary to make a determination on the merits. *Id.* (citing *Oyeniran v. Holder*, 672 F.3d 800, 806 [9th Cir. 2012]), *as amended* (May 3, 2012); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017).

Here, the issue raised by Charter's Motion is *identical* to the issue raised in the arbitration: ***Are Plaintiffs' claims arbitrable****?* The parties submitted opening briefs and replies on this issue to Arbitrator Cavanaugh. (Murphy Decl., ¶¶ 4, 5, Exs. 5, 6). Arbitrator Cavanaugh decided the issue. (Murphy Decl., ¶ 6, Ex. 7). There is no dispute that the Arbitrator's decision was final and on the merits, especially given that AAA closed the arbitrations following the decision. (Murphy Decl., ¶ 7, Ex. 8). There is also no question of Charter's privity, given it participated in the arbitration where it litigated this issue. All four elements are met.

It is settled law that a party may not relitigate an issue already decided in arbitration simply because it is dissatisfied with the consequences of that ruling. *Hansen v. Musk*, 122 F.4th 1162, 1173 (9th Cir. 2024) [arbitration provides a fair opportunity to litigate an issue, and the issue was litigated and decided, courts must give preclusive effect to the arbitrator's decision].

Charter's own briefing underscores why relitigating is improper. Charter emphasizes that arbitration decisions, particularly threshold issues, are final, binding, and entitled to deference, and that permitting parties to relitigate those decisions would undermine the FAA and the arbitral process. (Dkt. 18 at 9:11-23). That principle applies with full force here. Charter cannot invoke arbitral finality when it prevails and discard it when the result no longer serves its litigation strategy.

**D. <u>Judicial Estoppel Bars Charter from Seeking a Motion to Compel</u>**

California courts apply a five-factor test to determine whether judicial estoppel applies: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial proceedings; (3) the party was successful in asserting the first position, meaning it was adopted by the tribunal; (4) the two positions are totally inconsistent; and (5) the first position was not taken as the result of fraud, ignorance, or mistake. *Textron Inc. v. Travelers Casualty & Surety Co.*, 45 Cal.App.5th 733 (2020). The United States Supreme Court established a three-factor framework to determine when the doctrine of judicial estoppel applies in *New Hampshire v. Maine*, 532 U.S. 742 (2001). The Court determined the doctrine applied when (1) a party asserts a position that is clearly inconsistent with its earlier position; (2) the party's earlier position was accepted; and (3) the party later seeks to assert an inconsistent position that would present an unfair advantage to the opposing party if it was not estopped. *New Hampshire v. Maine*, 532 U.S. at 750-51. An arbitration proceeding constitutes a judicial or quasi-judicial proceeding for the purpose of judicial estoppel. *Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996).

Judicial estoppel differs from collateral estoppel in that judicial estoppel does not require a final judgment. *Jackson v. Cnty. of Los Angeles*, 60 Cal.App.4th 171, 182 (1997). Whereas collateral estoppel is designed to "conserve judicial resources by preventing repetitive litigation," while judicial estoppel "maintain(s) the purity and integrity of the judicial process by preventing inconsistent positions from being asserted." *The Swahn Group, Inc. v. Segal*, 183 Cal.App.4th 831, 842 (2010).

Charter's motion is barred by judicial estoppel. Charter affirmatively persuaded the Process Arbitrator that the claims were non-arbitrable and that the AAA lacked jurisdiction, and it prevailed on that position. (Murphy Decl., ¶¶ 4, 5, 6, Exs. 5, 6, 7). Having obtained a ruling closing the arbitrations on that basis, Charter

may not reverse course and ask this Court to compel arbitration of the very same claims it argued could not be arbitrated.

By protecting the integrity of the judicial process, judicial estoppel prevents a party from taking one position to obtain a favorable ruling and then adopting a contrary position in a later proceeding when the earlier result proves inconvenient. *Levin v. Ligon*, 140 Cal.App.4th 1456 (2006) [the doctrine of judicial estoppel prevents a party from taking a position inconsistent with a previous litigation position]. That is precisely what Charter attempts to do here and the doctrine of judicial estoppel forbids it. As a result, Charter's Motion must fail because it is judicially estopped from raising the issue of arbitration after successfully convincing the arbitrator that Plaintiffs' claims were not arbitrable.

## V. CLASS ACTION WAIVERS OUTSIDE OF THE CONTEXT OF ARBITRATION ARE UNCONSCIONABLE, UNENFORCEABLE AND VOID

Charter's alternating positions in arbitration and now in court create a structural contradiction. Charter successfully contended that the small-claims exclusion removes this dispute from arbitration. But if arbitration is unavailable, the FAA's preemptive protection does not apply. In that posture, the class action waiver must stand or fall under ordinary California law. As set forth below, California's unconscionability doctrine, the Consumers Legal Remedies Act's express anti-waiver provision, and the structural limitations of small-claims court independently render the class action waiver unenforceable.

///

///

//

### A. The Small-Claims Carve-Out Places This Dispute Outside Arbitration and into the Judicial System

Charter's small-claims carve-out removes this dispute from arbitration and places it squarely within the judicial system. And critically, once the arbitrator determined that the claims fall within that carve-out and are not arbitrable, the matter ceased to be subject to arbitration at all. That determination ends arbitration. It does not suspend it, defer it, or leave it conditionally pending. The claims are no longer arbitrable. A court action and an arbitration are not the same thing.

Under California law, "[a]n action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Cal. Civ. Pro. § 22. Small-claims matters fall squarely within that definition. They are adversarial proceedings in a court of justice in which one party sues another for monetary or statutory relief. California courts have consistently held that the small-claims court is not a separate tribunal outside the judicial system, but rather a procedural division within it.

This principle has been settled in California for at least a century. In *Hughes v. Municipal Court of City of Los Angeles*, 200 Cal. 215, 218-219 (1926), the California Supreme Court explained that the California Legislature enabled the court system to create small claims courts to reduce costs of trial for cases in which demands were small in order to prevent municipal courts from being overly congested. Similarly, in *Pacific Dry Goods Co. v. Superior Court*, 9 Cal.App.2d 707 (1935), the Court of Appeal reaffirmed that: "The small-claims court came into existence in 1921 … but … an independent tribunal was not created. The law provided merely for a subsidiary of the justice court." *Id.* at 709.

Small-claims proceedings are thus civil actions conducted within the state's courts of justice. They result in enforceable judgments, are subject to post-judgment enforcement procedures, and are reviewed within the superior court framework. *General Electric Capital Auto Financial Services, Inc. v. Appellate Division*, 88 Cal.App.4th 136 (2001) (treating small-claims matters as limited civil cases subject to appellate review); *Davis v. Taliaferro*, 206 Cal.App.2d 764 (1962) (small-claims matters handled within superior court structure).

Arbitration is fundamentally different. Arbitration is not an "action" and does not occur within the judicial system. In *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459 (1994), the court, in reviewing a right to attach order, found that: "the contractual arbitration conducted herein was outside the judicial system and was an independent proceeding, neither an action nor a special proceeding…" *Id.* at 1466. Likewise, the Ninth Circuit has recognized the practical and legal distinction between arbitration and court proceedings: "we may speak of 'commencing an arbitration' rather than 'commencing a lawsuit,'" and "[w]e also may say that we are 'going to arbitration' instead of 'going to court.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 745, fn. 6 (9th Cir. 2014).

That distinction is dispositive here. If Charter's small-claims exclusion applies, as it successfully argued before the AAA, then the dispute must proceed as a civil action in a court of justice. It is no longer subject to arbitration or the arbitration agreement. And once the dispute is removed from arbitration, it is likewise removed from the FAA's arbitration-specific protections.

Having secured a ruling that the claims are not arbitrable, Charter cannot now resurrect arbitration in federal court. The arbitrator's determination means what it says: these claims are not subject to arbitration. They must proceed as a civil action in a court of justice.

### B. The FAA Applies Only to Arbitration Agreements - Not to Standalone Class Action Waivers

The Federal Arbitration Act ("FAA") governs agreements to arbitrate disputes. It does not create a freestanding federal rule insulating class action waivers from generally applicable state contract defenses when arbitration is not compelled.

Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has repeatedly held that courts must "rigorously enforce arbitration agreements according to their terms." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013). At the same time, the FAA's savings clause preserves "generally applicable contract defenses" and was intended to make arbitration agreements "as enforceable as other contracts, but not more so." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719 (9th Cir. 2020), citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 fn. 12 (1967).

The Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) does not alter this framework. *Concepcion* held that the FAA preempts state rules that interfere with the "fundamental attributes of arbitration." *Id.* at 344. The Court's reasoning was expressly tied to protecting arbitration as a streamlined, bilateral dispute-resolution mechanism. *Id.* at 344–351. *Concepcion* does not hold that class action waivers are categorically immune from state contract defenses in every forum. Rather, it holds that states may not apply unconscionability doctrines in a manner that undermines *arbitration itself*.

Courts applying California law have recognized this limitation. In *Meyer v. Kalanick*, 185 F.Supp.3d 448 (S.D.N.Y. 2016), the court, applying California law, squarely held:

> "Supreme Court decisions do not invalidate in toto the California rule that class action waivers may be held unconscionable….[T]he logic behind the Supreme Court decisions on FAA preemption of class arbitration waivers is not readily transferable to class actions outside the arbitration setting."

*Id.* at 458.

Courts have repeatedly recognized that *Concepcion's* preemptive force is confined to arbitration agreements and does not displace generally applicable unconscionability doctrine outside arbitration. See *Sonic–Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1143 (2013) (*Concepcion* "clarifies the limits the FAA places on state unconscionability rules as they pertain to arbitration agreements"); *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) ("§ 2's 'any contract' language requires arbitration agreements to be placed on equal footing with non-arbitration agreements"); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 578 n.12 (N.D. Cal. 2025) ("*Concepcion* did not affect general unconscionability principles outside of the arbitration context").

The distinction between arbitration agreements and class action waivers reinforces this conclusion. The Ninth Circuit has recognized that "although class action waivers are often found in arbitration agreements…the two contract terms are conceptually distinct." *Laver v. Credit Suisse Securities* (USA), LLC, 976 F.3d 841, 846 (9th Cir. 2020). An arbitration agreement "is a promise to have a dispute heard in some forum other than a court," whereas a class action waiver "is a promise to forego a procedural right to pursue class claims." *Id*.

Accordingly, once arbitration is not compelled, the FAA's preemptive force does not follow the dispute into court. Where arbitration is unavailable- whether because of a contractual small-claims exclusion or otherwise- the class action waiver operates independently and is governed by ordinary state contract principles.

Accordingly, if Charter's small-claims exclusion applies and arbitration is not compelled, the FAA does not preempt California law. The enforceability of the class action waiver must therefore be evaluated under California's unconscionability doctrine and applicable consumer-protection statutes.

### C. <u>Outside Arbitration, Class Action Waivers Are Subject to Ordinary California Unconscionability Principles</u>

If arbitration is not compelled, California's ordinary unconscionability doctrine governs the enforceability of the class action waiver. California Civil Code section 1670.5 provides that if a court finds "any clause of the contract to have been unconscionable at the time it was made," the court may refuse to enforce the contract or clause. That doctrine applies to contracts generally, not merely to arbitration provisions. The FAA does not supply an independent rule requiring enforcement of litigation waivers once arbitration is unavailable.

The California Supreme Court explained in *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), class action waivers in consumer contracts of adhesion may be unconscionable where disputes predictably involve small amounts of damages and the stronger party is alleged to have engaged in a scheme affecting large numbers of consumers. *Id.* at 162-63. Under those circumstances, the waiver operates in practice as an unlawful exculpatory clause under Civil Code section 1668 ["All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law"]. *Id*.

California courts have clarified that the unconscionability inquiry turns on whether a class waiver operates as a practical exculpatory clause. *Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, 647 (2010) (substantive

unconscionability must be evaluated based on the waiver's "exculpatory effect," not merely on whether class procedures are preferable). Where a contract of adhesion forecloses class procedures in a setting involving predictably small damages, the waiver may effectively exempt the drafting party from meaningful accountability.

Although *Concepcion* limited *Discover Bank* in the context of enforcing class waivers in arbitration agreements, it did not abolish or even diminish California's unconscionability doctrine *outside arbitration*. In *Meyer v. Kalanick*, the defendant did not seek to compel arbitration; instead he argued that the plaintiff had waived the right to proceed as a class in court. *Meyer v. Kalanick,* 185 F.Supp.3d at 451, 453. Applying California law, the court held the agreement contained no independent class action waiver outside the arbitration context (*which was not triggered*) and even if it did, such a clause would be unconscionable under California law. The *Meyer* court explained that *Concepcion's* FAA preemption rationale- aimed at protecting arbitration's "fundamental attributes"- does not invalidate California unconscionability doctrine outside arbitration. *Id.* at 457 ["[I]t is clear that the Supreme Court has not overridden the California Supreme Court's determination that class action waivers are unconscionable in the circumstances discussed above, except in the case of an arbitration proceeding"]. The *Meyer* court plainly stated that "*Concepcion* thus provides no basis on which to conclude that California law on the unconscionability of class action waivers would be invalid outside the arbitration setting." *Id.* at 458.

The Ninth Circuit recently reaffirmed the limited scope of FAA preemption in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), cert. denied 146 S. Ct. 96 (2025). In *Heckman*, consumers brought a putative class action alleging anticompetitive conduct, and the defendants moved to compel arbitration under a newly implemented "mass arbitration" protocol that batched claims and

applied bellwether rulings to nonparticipating claimants. *Id*. at 676–78. The Ninth Circuit held that the method of dispute resolution was "not arbitration as envisioned by the FAA in 1925[,]" and as a result, the application of California law is not preempted by the FAA and "*Discover Bank* therefore applies." *Id*. at 690. The court explained that the FAA's preemptive force is tied to protecting traditional bilateral arbitration, and where a dispute resolution mechanism falls outside that framework, FAA obstacle preemption does not attach. Here, the posture is even clearer. Charter contended that the small-claims exclusion applies and that arbitration is therefore unavailable. Under *Heckman's* reasoning, where FAA preemption does not apply, California's *Discover Bank* rule governs.

The *Discover Bank* structure is presented here. The Residential Terms are a standardized consumer contract imposed on subscribers without negotiation. It is incontestably a contract of adhesion.[1] The alleged misconduct involves uniform pricing practices affecting large numbers of consumers and predictably small individual overcharges. If arbitration is unavailable by virtue of Charter's small-claims exclusion, enforcement of the class action waiver would require each consumer to pursue small-value claims individually in a forum that does not permit aggregation. In combination, these features eliminate any realistic mechanism for aggregate redress.

Under Civil Code sections 1668 and 1670.5, and the principles articulated in *Discover Bank*, such a waiver operates as a practical exemption from responsibility

[1] California courts define a contract of adhesion as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305 (2005). The distinctive feature is that "the weaker party has no realistic choice as to its terms." *Dameron Hospital Assn. v. Progressive Casualty Ins. Co.*, 111 Cal.App.5th 530 (2025).

for widespread small-value harms and is therefore unconscionable under California law.

**D. <u>The CLRA Expressly Renders Class Action Waivers Void</u>**

The Consumers Legal Remedies Act independently renders Charter's class action waiver unenforceable. California Civil Code section 1781 expressly authorizes a consumer to bring an action "on behalf of himself or herself and other consumers similarly situated" for violations of the CLRA. Cal. Civ. § 1781(a),(b). The class mechanism is not incidental; it is a statutory enforcement tool designed to address widespread consumer harm.

Civil Code section 1751 further provides:

> "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."

Cal. Civ. § 1751.

A contractual provision that prohibits a consumer from pursuing CLRA relief on a class basis operates as a waiver of the enforcement mechanism expressly authorized by section 1781. Under section 1751, such waivers are void as a matter of California public policy.

Although *Concepcion* limits the application of section 1751 to invalidate class waivers contained within arbitration agreements governed by the FAA, that limitation is confined to the arbitration context. Where arbitration is not being compelled- as is the case with these claims under Charter's small-claims exclusion- the FAA does not preempt application of the CLRA's anti-waiver provision. In that posture, section 1751 applies according to its terms.

Because Plaintiffs assert CLRA claims and the statute expressly authorizes class-wide relief, Charter's attempt to contractually eliminate that mechanism is void under Civil Code section 1751.

## E. Plaintiffs Cannot Litigate a Class Action in Small-Claims Court

California small-claims court is a limited civil division designed for streamlined, individual disputes. It does not permit class actions. Code of Civil Procedure sections 116.220 and 116.221 limit the jurisdiction to demands that do not exceed $12,500. The Complaint alleges damages greater than $75,000. (Dkt. 1, ¶ 7). Furthermore, Code of Civil Procedure section 116.420(a) explicitly provides that "no claim shall be filed or maintained in small-claims court by the assignee of the claim." Cal. Civ. Pro. § 116.420. Class actions require more attention, time, and paperwork than a small-claims court can provide. "[A] small claims proceeding risks depriving consumers of the forum, tools, or procedures to prove their cases and obtain relief." *Rios v. HRB Digital LLC*, 807 F. Supp.3d 975, 991-92 (N.D. Cal. Oct. 27, 2025), appeal filed, No. 25-7199 (9th Cir. Nov. 14, 2025).

In *Rios v. HRB Digital LLC*, the court in denying a motion to compel arbitration addressed whether a small-claims carve-out provided a meaningful forum for consumers asserting statutory claims. The court explained that small-claims proceedings are "not a substitute for litigation in a court of general jurisdiction," particularly where claimants may exceed jurisdictional limits or require meaningful discovery and procedural safeguards. *Id*. The court further recognized that claimants in small-claims court "face sharply limited (potentially nonexistent) discovery and truncated procedures," making it an inadequate vehicle and "illusory alternative" for complex or aggregated claims.

The same logic applies here. A class action, by definition, aggregates claims beyond the jurisdictional limits of small-claims court. If arbitration is unavailable under the small-claims exclusion, and the class action waiver is enforced, Plaintiffs would be left with no forum capable of adjudicating class-wide relief. If Plaintiffs

filed this class action in small-claims court, it would undoubtedly be transferred to another court *inside the judicial system*.

This scheme was condemned by the California Supreme Court in *Discover Bank*. There, the Court quoted with approval the observation that a class action waiver in a consumer contract of adhesion is unconscionable where the defendant is "[f]ully aware that few customers will go to the time and trouble of suing in small claims court" and has "instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights." *Discover Bank v. Superior Court*, 36 Cal.4th at 159-60. Charter's scheme is even more brazen. It did not merely point consumers toward small claims court while knowing they would not bother- it affirmatively argued before an arbitrator that small claims court was the *contractually mandated* forum, obtained a ruling to that effect, and now argues in federal court that the class action waiver bars any aggregate proceeding in a court of justice. The result is a closed loop: no arbitration, no class action, and a small claims court that cannot by law adjudicate class-wide relief. No law permits a company to structure its dispute resolution scheme to guarantee that no forum capable of meaningful accountability will ever be available. As the Court concluded: "The clause is not only harsh and unfair to Discover customers…but it also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place." *Id.* The same is true for Plaintiffs and other Charter customers.

### F. <u>Charter Fails to Provide Authority Supporting Striking the Class Allegations</u>

Charter relies on only two authorities in support of striking Plaintiffs' class allegations: *Concepcion* and *Melili* (unpublished), where a district court granted a motion to compel arbitration and strike class claims against Charter. (Dkt. 18 at 19).

*Concepcion* "provides no basis on which to conclude that California law on the unconscionability of class action waivers would be invalid outside the arbitration setting." *Meyer v. Kalanick*, 185 F.Supp.3d at 458.

The other case, *Melili v. Charter Commc'ns Operating, LLC*, 2023 WL 12173445 (No. 2:23-cv-00282-SPG-JPR) (C.D. Cal. May 30, 2023) , an unpublished Central District case before Judge Garnett, is not a sister case to this Action. The only similarity between this Action and *Melili* is that they both concern wrongful conduct by Charter. In *Melili*, the plaintiff alleged that Charter violated the Telephone Consumer Protection Act by repeatedly calling and texting the plaintiff, despite his having requested Charter to stop soliciting him. After the plaintiff filed his complaint on behalf of himself and two classes, Charter brought a motion to compel arbitration, arguing that Plaintiff, as a subscriber to Charter's internet services, agreed to individually arbitrate any disputes. Charter successfully requested the court compel arbitration and strike Plaintiff's class claims. The court found that "[c]lass waivers in arbitration agreements" are enforceable and acknowledged that plaintiff "has not substantively opposed Defendant's argument that the class claims should be struck." *Id.* at *1-2, 8-9.

This case presents a fundamentally different posture. Here, Plaintiffs initiated arbitration. Charter argued that the claims were not arbitrable under its small-claims exclusion. The Arbitrator agreed and ordered the cases to be sent to the judicial system, and closed the cases. No arbitrator in *Melili* determined that arbitration was unavailable. Nor did Charter in *Melili* argue that arbitration could not proceed and then attempt to invoke arbitration-based class waiver principles in court. The case in *Melili* was not ordered to the judicial system instead of arbitration.

Here, arbitration has been declared unavailable based on Charter's own position and the Arbitrator's ruling. Once arbitration is removed from the equation,

*Concepcion*'s FAA-based preemption analysis does not follow the dispute into federal court. The enforceability of the class action waiver must instead be evaluated under ordinary California contract principles, as discussed above.

Accordingly, Charter has failed to demonstrate how *Concepcion* or *Melili* require striking Plaintiffs' class allegations.

## VI. PUBLIC INJUNCTIVE RELIEF IS NOT ARBITRABLE

California law bars arbitration of public injunctive relief claims because such relief serves the broader public interest and cannot be waived or resolved in private forums. In *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal.4th 303 (2003), the California Supreme Court explained that "requests for injunctive relief designed to benefit the public presented a narrow exception to the rule that the FAA requires state courts to honor arbitration agreements." *Id.* at 312. Public injunctive relief is fundamentally distinct from private injunctive relief: it is aimed at preventing future harm to the general public and requires judicial oversight to ensure compliance.

The Court first articulated this principle in *Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066 (1999) , holding that claims for public injunctive relief under the CLRA are incompatible with arbitration because such relief entails ongoing judicial supervision and enforcement of public rights. *Id.* at 1082–83. In *Cruz*, the Court reaffirmed and extended that rule to public injunctive relief claims under the Unfair Competition Law. *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal.4th at 307.

The Complaint in this action expressly seeks public injunctive relief designed to protect the consuming public at large. Plaintiffs seek orders requiring Charter to: provide clear and accurate bills; give advance notice of surcharge increases; cease misleading representations regarding the Broadcast TV Surcharge; issue corrective disclosures; implement compliance oversight procedures; and revise standardized

terms to prevent ongoing deception. (Dkt. 1, ¶ 43). These remedies are forward-looking and intended to prevent systemic harm to current and future subscribers- not merely to remedy past injury to the named Plaintiffs.

California public policy reinforces this framework. Civil Code section 3513 provides that "[a] law established for a public reason cannot be contravened by a private agreement." Cal. Civ. § 3513. Public injunctive relief exists precisely to vindicate such public laws. As the California Supreme Court emphasized in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), courts play a central role in adjudicating claims that seek relief "for the benefit of the general public." *Id.* at 961 (*citing Cruz*, 30 Cal.4th at 315-16). A private arbitration forum lacks the transparency, precedential force, and supervisory authority necessary to enforce systemic injunctive remedies affecting the public at large.

Moreover, Plaintiffs' public injunctive relief claims are not severable. "A public injunction is a unitary remedy that cannot be divided into 'individual' and 'representative' components." *Vaughn v. Tesla Inc.*, 87 Cal.App.5th 208, 237 (2023). Under California law, equitable and legal remedies are non-severable features of a single cause of action. *Nationwide Biweekly Administration, Inc. v. Superior Court*, 9 Cal.5th 279 (2020). Charter cannot compel arbitration of damages while stripping away the public injunctive component of the same statutory claim.

Accordingly, because Plaintiffs seek public injunctive relief under the CLRA and UCL to prevent ongoing and future harm to the public, those claims must remain in this Court and are not subject to arbitration.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Compel Arbitration in its entirety.

Date: March 2, 2026

Respectfully Submitted,

/s/ Evan Murphy
Murphy Advocates LLC
Evan Murphy, *pro hac vice admitted*
Mo. Bar No. 58386
338 Selma Ave.
St. Louis, MO 63119
(314) 753-5212
evan@murphyadvocates.com

/s/ Alexander H. Winnick
Winnick Law, PC
Alexander H. Winnick
CA Bar No. 239430
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
(424) 317-7411
aw@winlawpc.com

Attorneys for Plaintiffs
and the Proposed Class

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Barbara Barber, Antonio Duenas, Alfred Holguin, and Andrew Epstein, hereby certifies, in accordance with Local Rule 11-6.2, that the foregoing brief complies with Local Rule 11-6.1. According to the word count of the word-processing system used to prepare the brief, it contains 6,952 words, excluding indices and exhibits. The brief therefore does not exceed the 7,000-word limit set by Local Rule 11-6.1.

Dated: March 2, 2026

By: /s/ Evan Murphy
Evan Murphy