UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-12361-MCS-AJR** | Date | March 17, 2026 |
| Title | ***Barber v. Charter Commc'ns, Inc.*** | | |

| | |
|---|---|
| Present: The Honorable | Mark C. Scarsi, United States District Judge |

| | |
|---|---|
| Stephen Montes Kerr | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER RE: MOTION TO COMPEL ARBITRATION (ECF NO. 18) (JS-6)**

Plaintiffs Barbara Barber, Antonio Duenas, Alfred Holguin, and Andrew Epstein bring this putative consumer class action against Defendant Charter Communications, Inc., doing business as Spectrum. (*See generally* Compl., ECF No. 1.) Defendant filed a motion to compel arbitration of Plaintiffs' claims, strike the class allegations, and dismiss or stay the case. (Mot., ECF No. 18.) Plaintiffs filed a brief opposing the motion, (Opp'n, ECF No. 21), and Defendant filed a reply, (Reply, ECF No. 22). The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

///

## I. BACKGROUND[1]

Broadly, Plaintiffs claim that Defendant charges customers a broadcast TV surcharge, which is a "hidden fee[] imposed without adequate disclosure or contractual basis[ and] functions as a deceptive price increase." (Compl. ¶ 1; *see generally id.* ¶¶ 12–22.) Plaintiffs seek to represent a class of Defendant's cable television subscribers in California who were charged a broadcast TV surcharge. (*Id.* ¶ 24.) They assert six claims: (1) unfair competition under California Business and Professions Code section 17200, (2) violation of the California Consumer Legal Remedies Act ("CLRA"), (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) quasi-contract, and (6) fraud. (*Id.* ¶¶ 30–80.)

Defendant asserts, and Plaintiffs do not meaningfully dispute, that in connection with their subscription to Defendant's services, Plaintiffs are bound to the Spectrum Residential General Terms and Conditions of Service by dint of their acknowledgments of the agreement, payment of invoices referencing the agreement, and participation as an authorized user on an active account. (*See* Dean Decl. ¶¶ 11–33, ECF No. 18-1; *see also id.* Ex. A, at 10,[2] ECF No. 18-1 (providing means of acceptance of the agreement); *see generally* Opp'n (presenting no argument as to acceptance).) The current terms of the agreement include arbitration provisions:

> Spectrum and Subscriber agree to arbitrate disputes and claims arising out of or relating to these Terms of Service, the Services, the Equipment, or marketing of the Services Subscriber has received from Spectrum. Notwithstanding the foregoing, either party may bring an individual action on any matter or subject in small claims court.
>
> . . .
>
> The arbitration shall be governed by the Consumer Arbitration Rules (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Terms of Service, and the arbitration shall be

---

[1] The Court considers evidence the parties presented outside the pleadings to adjudicate the motion. *Manuwal v. BMW of N. Am., LLC*, 484 F. Supp. 3d 862, 864 n.1 (C.D. Cal. 2020).

[2] Pinpoint citations of the agreement refer to the CM/ECF pagination.

> administered by the AAA. The AAA Rules and fee information are available at "www.adr.org," by calling the AAA at 1-800-778-7879, or by writing to the Arbitration Notice Address.
>
> The arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, scope, or enforceability of these arbitration provisions and these Terms of Service.
>
> . . .
>
> EXCLUSIONS. SUBSCRIBER AND SPECTRUM AGREE THAT THE FOLLOWING CLAIMS OR DISPUTES SHALL NOT BE SUBJECT TO ARBITRATION:
>
> (1) ANY INDIVIDUAL ACTION BROUGHT BY SUBSCRIBER OR BY SPECTRUM ON ANY MATTER OR SUBJECT THAT IS WITHIN THE JURISDICTION OF A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS.

(Dean Decl. Ex. A, at 20–22.)

Invoking this agreement to arbitrate, Plaintiffs participated in a consumer mass arbitration against Defendant. (Mattingly Decl. ¶¶ 4, 6–9, ECF No. 18-2.) In connection with the mass arbitration, each individually submitted a demand for arbitration with AAA, claiming a violation of the CLRA based on Defendant's broadcast TV surcharge. (*Id.* Exs. I–L, ECF No. 18-2.) The arbitrator ultimately concluded that the individual claimants' cases in arbitration "should be closed" and directed the parties to "proceed in small claims court." (*Id.* Ex. M, at 24, ECF No. 18-2.) Instead of doing so, months later Plaintiffs filed this lawsuit.

## II. LEGAL STANDARD

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Generally, a court's role is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). State law principles of contract formation guide the inquiry as to these threshold issues. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023). But even these gateway issues can be submitted to an arbitrator where there is clear and unmistakable evidence that the parties intended that result. *See Brennan*, 796 F.3d at 1130 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

## III. DISCUSSION

Plaintiffs contend that an arbitrator previously determined that their claims are not subject to arbitration, so the Court should treat Defendant's motion as improperly attempting to relitigate the issue or untimely seeking vacation, modification, or correction of the arbitrator's decision. (Opp'n 6–11.) Defendant contends that this lawsuit is a de facto challenge to the unfavorable decision Plaintiffs received in the mass arbitration, and that the Court should enforce the arbitrator's order directing the parties to small claims court and dismiss the federal case. (Mot. 9–10, 19–21.)

Both positions assume that the prior mass arbitration should control this case. Notwithstanding the dispute over broadcast TV surcharges at the center of each proceeding, the claims and issues in this federal civil action are fundamentally different from those the parties litigated in and resolved through the mass arbitration. In the mass arbitration, Plaintiffs brought individual claims for violation of the CLRA. (Mattingly Decl. Exs. I–L.) In federal court, Plaintiffs assert class claims under six different legal theories. (Compl. ¶¶ 23–80.) The arbitral decision rested on

the arbitrator's opinion that the individual claims of the participants in the mass arbitration "should be resolved by way of small claims court actions, not by arbitration." (Mattingly Decl. Ex. M, at 16.) The arbitrator noted that the "[c]laimants concede[d] that their demands are individually modest," as they pleaded monetary damages "'up to' $10,000," falling within the jurisdiction of small claims courts. (*Id.* at 19.) The reasoning undergirding the arbitrator's decision has virtually no application here, where Plaintiffs invoke both the Court's diversity jurisdiction—in other words, they assert the amount in controversy exceeds $75,000 as to each of them, *see* 28 U.S.C. § 1332(a); *Pinel v. Pinel*, 240 U.S. 594, 596 (1916) ("[W]hen two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . . .")—and the Court's jurisdiction under the Class Action Fairness Act—in other words, they assert the aggregate amount in controversy exceeds $5,000,000, *see* 28 U.S.C. § 1332(d). (Compl ¶¶ 7–8.) Put another way, the arbitrator reasoned that Plaintiffs' individual CLRA claims were not arbitrable because they could be brought in small claims court; he did not decide whether the package of individual and class claims here, which place significantly more money in controversy, are arbitrable. Accordingly, the arbitrator's decision plays no part in the Court's resolution of the motion, and the Court rejects the parties' various arguments relying on it.[3]

Plaintiffs do not dispute that they are bound by a contract that delegates threshold questions of arbitrability to an arbitrator, nor do they question the enforceability of the delegation provision. (*See* Opp'n 6.) Accordingly, the Court will compel arbitration and leave the gateway issues of arbitrability for the arbitrator to resolve.

---

[3] Briefly: There is no claim preclusion, collateral estoppel, or judicial estoppel because the arbitral decision was not confirmed, and whether the new package of claims Plaintiffs bring in this suit are arbitrable was not litigated or decided in the mass arbitration. (Mot. 19–22; Opp'n 8–11); *see New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Hansen v. Musk*, 122 F.4th 1162, 1172–73 (9th Cir. 2024); *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989). This federal suit is not a de facto challenge to the arbitrator's decision or authority, and Defendant's motion is not a de facto motion to modify, vacate, or correct the decision, as the complaint addresses the dollar-value issue key to the arbitrator's opinion by joining new claims and adding class allegations, thus rendering the arbitrator's decision inapplicable. (Mot. 9–10; Opp'n 7–8); *see* 9 U.S.C. §§ 10–11; *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964).

Defendant asks the Court to strike the class allegations based on a class action waiver in the parties' agreement, and to dismiss the case instead of staying it. (Mot. 18–19.) The parties delegated to the arbitrator the issue of whether Plaintiffs' claims are arbitrable, including the class claims. Striking them now would undermine the agreement. *See, e.g.*, *Torres v. Secure Commc'n Sys., Inc.*, No. SACV 20-00980-JVS(JDEx), 2020 U.S. Dist. LEXIS 204104, at *10–11 (C.D. Cal. July 25, 2020) (collecting cases denying motions to strike class allegations given a delegation clause). Moreover, an arbitrator may decide that some or all of Plaintiffs' claims are not arbitrable, in which case requiring Plaintiff to file a new lawsuit and pay another filing fee would be inequitable. The Court stays the case instead of dismissing it. 9 U.S.C. § 3; *see* Fed. R. Civ. P. 1 (requiring civil rules to be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding").

## IV. CONCLUSION

The Court grants the motion in substantial part. The Court orders the parties to submit this action to arbitration within 30 days pursuant to the terms of the arbitration agreement. *See* 9 U.S.C. § 5. The case is stayed pending resolution of the arbitration. *See id.* § 3.

The Court directs the Clerk to remove the case from the Court's active caseload until further application by the parties or order of this Court. The parties shall file a joint status report within 120 days, and a further report every 120 days thereafter. Each report must state on the cover page the date the next report is due. Additionally, the parties must notify the Court within seven days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**