UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-12361-MCS-AJR** | Date | September 21, 2026 |
| Title | ***Barber v. Charter Commc'ns, Inc.*** | | |

| | |
|---|---|
| Present: The Honorable | Mark C. Scarsi, United States District Judge |

| | |
|---|---|
| Stephen Montes Kerr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER RE: MOTION TO LIFT STAY (ECF NO. 27)**

Plaintiffs Barbara Barber, Antonio Duenas, Alfred Holguin, and Andrew Epstein bring this putative consumer class action against Defendant Charter Communications, Inc., doing business as Spectrum. (*See generally* Compl., ECF No. 1.) The Court "order[ed] the parties to submit this action to arbitration" and stayed the case "pending resolution of the arbitration." (Order 6, ECF No. 24.) Plaintiffs move to lift the stay. (Mot., ECF No. 27.) Defendant filed a brief opposing the motion, (Opp'n, ECF No. 30), and Plaintiffs filed a reply, (Reply, ECF No. 31). The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I. BACKGROUND

Broadly, Plaintiffs claim that Defendant charges customers a broadcast television surcharge, which is a "hidden fee[] imposed without adequate disclosure or contractual basis[ and] functions as a deceptive price increase." (Compl. ¶ 1; *see generally id.* ¶¶ 12–22.)

Before this litigation, Plaintiffs participated in a consumer mass arbitration against Defendant before the American Arbitration Association ("AAA"); each

asserted a claim relating to the surcharge under the California Consumers Legal Remedies Act ("CLRA"). (Mattingly Decl. ISO Mot. to Compel ¶¶ 4, 6–9 & Exs. I–L, ECF No. 18-2.) In an order dated July 23, 2025, the arbitrator concluded that the individual claimants' cases in arbitration "should be closed" and directed the parties to "proceed in small claims court." (*Id.* Ex. M, at 24, ECF No. 18-2.)

Instead of doing so, months later Plaintiffs filed this lawsuit. Through the complaint, Plaintiffs seek to represent a class of Defendant's cable television subscribers in California who were charged a broadcast television surcharge. (Compl. ¶ 24.) They assert six claims: (1) unfair competition under California Business and Professions Code section 17200, (2) violation of the CLRA, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) quasi-contract, and (6) fraud. (*Id.* ¶¶ 30–80.) Plaintiffs invoke both diversity and the Class Action Fairness Act as bases for exercise of federal subject-matter jurisdiction. (*Id.* ¶¶ 7–8.)

On Defendant's motion, the Court compelled the parties to submit the action to arbitration. (Order 6.) The Court reasoned that, notwithstanding the surcharge allegations common to both proceedings, the claims and theories in this case are distinct from those addressed in the arbitrator's decision deeming the consumer mass arbitration claims non-arbitrable and suitable for adjudication on an individual basis in small claims court:

> The reasoning undergirding the arbitrator's decision has virtually no application here, where Plaintiffs invoke both the Court's diversity jurisdiction—in other words, they assert the amount in controversy exceeds $75,000 as to each of them, *see* 28 U.S.C. § 1332(a); *Pinel v. Pinel*, 240 U.S. 594, 596 (1916) ("[W]hen two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . . .")—and the Court's jurisdiction under the Class Action Fairness Act—in other words, they assert the aggregate amount in controversy exceeds $5,000,000, *see* 28 U.S.C. § 1332(d). (Compl. ¶¶ 7–8.) Put another way, the arbitrator reasoned that Plaintiffs' individual CLRA claims were not arbitrable because they could be brought in small claims court; he did not decide whether the package of individual and class claims here,

> which place significantly more money in controversy, are arbitrable.

(*Id.* at 5.) Citing 9 U.S.C. § 3, the Court stayed the federal action "pending resolution of the arbitration." (*Id.* at 6.)

Thereafter, AAA reopened the consumer mass arbitration proceeding on Plaintiffs' counsel's request, (Murphy Decl. ¶ 9, ECF No. 27-1), and Plaintiffs (and over 15,000 other mass arbitration participants) filed amended petitions, (Mattingly Decl. ISO Opp'n ¶ 7, ECF No. 30-1). Each of Plaintiffs' individual amended petitions asserted five claims: (1) violation of the CLRA, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) quasi-contract, and (5) fraud. (*See generally* Mattingly Decl. Ex. 1B, ECF No. 30-3.) Each demanded "damages up to $10,000.00." (*E.g.*, *id.* at 25.)[1]

The arbitrator took briefing on "the impact of the District Court order on the process arbitration and specifically as to whether the July 23, 2025 process arbitration order resolved the issue of arbitrability." (Murphy Decl. Ex. E, at 2, ECF No. 27-7.) In an order dated July 23, 2026, the arbitrator reasoned:

> The Process Arbitrator found—and still finds—that under the pertinent AAA rules as well as the parties' contract, Claimants were unentitled to arbitrate their demands, i.e., they were not arbitrable with the Association. Nothing has changed in that respect. Neither the additional causes of action, nor the four California Claimants' attempt to move forward with a class action alters the fact that the individual Claimants' demands sought damages arising out of the same monthly fee of a very modest nature (per claim) which can be brought in various small claims courts. Therefore, Claimants failed to meet the procedural and administrative rules which govern AAA mass arbitrations necessitating closure.

(*Id.* at 11.) The arbitrator concluded, "Neither the additional causes of action nor the addition of class allegations in the putative class action lawsuit alter the analysis or

---

[1] Pinpoint citations of the exhibits to this declaration refer to the page numbers appended to the bottom of each page.

the conclusion that the demands are not arbitrable before the AAA." (*Id.* at 14.) AAA closed the proceeding on August 12, 2026. (Murphy Decl. Ex. F, ECF No. 27-8.)

## II. LEGAL STANDARD

"[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," a district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Many courts interpret the mandatory language of 9 U.S.C. § 3 to strip them of discretion to lift a stay entered thereunder until the arbitration is had. *E.g.*, *Pappas v. AMN Healthcare Servs.*, No. 24-cv-01426-JST, 2026 U.S. Dist. LEXIS 183449, at *2–3 (N.D. Cal. Aug. 17, 2026) (denying leave to amend a complaint given mandatory stay); *Lovig v. Best Buy Stores LP*, No. 18-cv-02807-PJH, 2019 U.S. Dist. LEXIS 104481, at *7 (N.D. Cal. June 21, 2019) ("The plain language of the FAA seems to require that, if any issue is referred to arbitration, the court shall stay the action pending arbitration upon request." (internal quotation marks omitted)); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2019 U.S. Dist. LEXIS 77977, at *8–9 (C.D. Cal. Jan. 25, 2019) (reviewing cases and concluding that "the Court is not convinced it has the power to lift the stay and allow amendment before 'arbitration has been had'" (quoting 9 U.S.C. § 3)).

## III. DISCUSSION

The Court lacks discretion to lift the stay because an arbitration of the claims at issue in this federal action has not "been had in accordance with the terms of the agreement." 9 U.S.C. § 3.[2] Plaintiffs did not present the full suite of claims in this action to arbitration in the reopened mass arbitration proceeding. Specifically, Plaintiffs' individual amended petitions omitted any claim under California's unfair competition law, placed in controversy damages only up to $10,000 per claimant, and presented no class allegations or claims. (*Compare, e.g.*, Mattingly Decl. ISO Opp'n Ex. 1B, at 25–28, *with* Compl. ¶¶ 7–8, 24, 30–43.)

"The scope of the arbitrator's authority is limited to the issue submitted to him by the parties." *Sunshine Mining Co. v. United Steelworkers of Am., AFL-CIO, CLC*,

[2] To the extent the Court has discretion to lift the stay notwithstanding the mandatory language of 9 U.S.C. § 3, the Court declines to exercise it for the reasons stated in this Order.

823 F.2d 1289, 1294 (9th Cir. 1987). While the arbitrator took briefing on the impact of the federal action on the arbitral proceedings, and his reasoning takes into consideration the package of claims presented here, the collection of claims at issue in the arbitration—the claims within the arbitrator's jurisdiction to address—was incongruent with the claims here. The arbitrator's decision illustrates the quandary:

> Neither the additional causes of action, nor the four California Claimants' attempt to move forward with a class action alters the fact that *the individual Claimants' demands* sought damages arising out of the same monthly fee of a very modest nature (per claim) which can be brought in various small claims courts.
>
> . . .
>
> Neither the additional causes of action nor the addition of class allegations in the putative class action lawsuit alter the analysis or the conclusion that *the demands* are not arbitrable before the AAA . . . .

(Murphy Decl. Ex. E, at 11, 14 (emphases added).) In other words, the arbitrator's conclusion that Plaintiffs' claims are non-arbitrable pertains only to the claims presented in the mass arbitration demands.

Supporting this interpretation, the arbitrator's reasoning would not hold if it were applied to the claims in the federal action. By invoking diversity jurisdiction in the federal complaint, (Compl. ¶ 7), Plaintiffs effectively represented that each individual's claims placed over $75,000 in controversy in the aggregate, *see* 28 U.S.C. § 1332(a); *Snyder v. Harris*, 394 U.S. 332, 335 (1969) ("Aggregation has been permitted . . . in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant . . . ."); *Pinel v. Pinel*, 240 U.S. 594, 596 (1916) ("[W]hen two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . . ."). Accepting that premise, the cluster of claims in the federal action could not be submitted to a California small claims court on an individual basis given the applicable ceilings on the amount in controversy and number of actions an individual may file in a calendar year. *See* Cal. Civ. Proc. Code § 116.221 (providing that "the small claims court has jurisdiction in an action brought by a natural person, if the amount of the demand does not exceed twelve thousand five hundred dollars ($12,500)," with exceptions and extensions not applicable here); *id.* § 116.231(a) (providing that "no person may file more than two

small claims actions in which the amount demanded exceeds two thousand five hundred dollars ($2,500), anywhere in the state in any calendar year," with an exception not applicable here). On the other hand, Plaintiffs' individual amended petitions in the mass arbitration sought "up to $10,000," below the cap,[3] rendering the claims non-arbitrable in the arbitrator's view. (Mattingly Decl. ISO Opp'n Ex. 1B, at 25; *see* Murphy Decl. Ex. E, at 11.) The Court is uncertain how or why the value of Plaintiffs' claims shrunk between the complaint and the amended petitions, or how or why the value of the unfair competition claim omitted from their amended petitions exceeds $65,000. (*But see* Mattingly Decl. ISO Opp'n Ex. 1C, at 42–43, 43 n.1 (arguing before the arbitrator that the "per-claimant value of the . . . dispute . . . has not changed," and that aggregation "has no bearing on whether any individual claim, standing alone, exceeds the small claims jurisdictional ceiling").) What is clear, though, is that the suite of claims in the federal action is materially distinct from those Plaintiffs pursued in their original and amended petitions in the mass arbitration.

Further, the arbitrator's decision does not indicate whether the class claims at issue in this action are arbitrable. While AAA mass arbitrations bear some resemblance to class actions, the mass arbitration proceeded upon Plaintiffs' and other mass arbitration participants' individual petitions, not upon class claims or some other representative basis. (*See* Mattingly Decl. ISO Opp'n ¶ 7 (memorializing the filing of over 15,000 amended petitions); Murphy Decl. Ex. E, at 9 ("Claimants initially filed in excess of 15,000 claims against Spectrum as part of a mass arbitration—not a class action arbitration . . . .").) As discussed, the arbitrator's decision addressed the arbitrability of the claims presented in the individual demands by the claimants, not the arbitrability of class claims by any given putatively representative claimant, which were never at issue in the mass arbitration.

On this limited record, the Court declines to infer any bad faith from Plaintiffs' decision to reopen the mass arbitration to pursue claims inconsistent with the claims at issue in this action. Although the parties technically violated the Court's order compelling them to timely submit this action to arbitration, the consequence Defendant advocates—deeming the claims waived, (Opp'n 1–2)—would not be consistent with the parties' agreement to submit questions of arbitrability of the claims in this action to an arbitrator, (*see* Order 5–6), which has yet to be formally accomplished. Accordingly, without disturbing the stay of proceedings, the Court on

[3] Before 2024, the California small claims court had a $10,000 jurisdictional limit. *See* 2023 Cal. Stat. ch. 861 (bill amending limit).

its own motion finds good cause and excusable neglect sufficient to reopen and extend the deadline for the parties to submit the action to arbitration. Fed. R. Civ. P. 6(b)(1).

## IV. CONCLUSION

Plaintiffs' motion to lift the stay is denied. On its own motion, the Court reopens and extends the deadline to submit the action to arbitration until 30 days after entry of this Order.

**IT IS SO ORDERED.**